**GABRIEL & SHAPIRO, LLC**

3361 PARK AVENUE
WANTAGH, NEW YORK 11793
T: 516.783-6565 | F: 516.717-3196 (Not For Service)

Max Valerio
516.783-6565 (ext -102)
mvalerio@gabrielshapiro.com

July 12, 2019

Honorable Sanket J. Bulsara, U.S. Magistrate Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      **RE:**  *Government Employees Ins. Co., et al. v. Epione Medical, P.C., et al.*
            Case No.: 1:18-cv-03159 (SJ-SJB)

Dear Magistrate Judge Bulsara:

We represent non-party objectors Samuel Theagene, MD (Theagene), Central Park Physical Medicine, PC (Central Park), Denny X. Rodriguez, MD (Rodriguez), and St. Francis Healthcare Medical, PC (St. Francis) (collectively, "Objectors"). Objectors respectfully submit the following in opposition to the Letter Motion to compel compliance with certain subpoenas ("Motion") filed by Plaintiffs (collectively, "GEICO") on 6/19/19. Docket Entry ("DE") 72.

    **I.**     **The Motion should be denied on procedural grounds. GEICO did not meet and confer. At a minimum, the branch of the Motion relating to Objectors should be severed and denied without prejudice**

The Motion should be denied on procedural grounds, for two related reasons. The first is GEICO's failure to comply with both Local Rule 37.3(a) and §IV.B of the Court's Individual Practices: GEICO did not attempt to resolve this dispute before filing the Motion.

Copies of Objectors' objections and GEICO's responses are annexed hereto, respectively, as ***Exhibits A*** and ***B***. On 4/16/19, Objectors timely contacted GEICO, which responded a few days later. GEICO's response was followed by two months of silence and inaction. This was plenty of time for an effort to avoid motion practice.

GEICO might have had its reasons for this neglect. However, the Motion contains no explanation of what transpired between its response to Objectors and the filing of the Motion.

A single correspondence threatening court action is not a meaningful attempt to "meet and confer." The applicable rules demand interaction between counsel "by telephone or in person" — a requirement supported both by common sense and by anecdotal evidence that "banging heads together," be it as a genuine attempt to resolve disagreements or just as reluctant compliance with a mandatory procedural step, leads to compromise or to fewer issues left for judicial adjudication.

Objectors' main concerns, in ***Exhibits A*** and ***B***, were easy to detect. Had GEICO made a bare, sincere effort to heed those concerns, it could well have obtained the information sought without resorting to motion practice.

Because the Motion lacks any indication of a good-faith attempt by GEICO to meet and confer, or of any justification for its failure to do so, the Motion should be denied on this ground alone.

The second procedural ground warranting denial is intertwined with the first. The branch of the Motion seeking relief against Objectors should be severed. In the Court's discretion, the defaulting non-parties may well be compelled to comply with their respective subpoenas. Such relief, however, would be unwarranted against Objectors, who timely and properly acted to defend their interests. Yet, the Motion lumps together allegations of wrongdoing against *all* non-parties,

making it impossible to discern what specifically supports the subpoenas against Objectors and, more to the point, what information they might have that is germane to this action.

At a minimum, therefore, the branch of the Motion seeking relief against Objectors should be severed and denied, possibly with leave to re-file upon more detailed grounds.

## II. The Motion should be denied on the merits. The subpoenas are not proportional to the Amended Complaint. The Amended Complaint fails to state a claim

Assuming the Court takes a lenient view of the above procedural failures, this leads us to the merits. At the outset, Objectors unequivocally and expressly deny any allegation or mere suggestion of wrongdoing in the conduct of their professional affairs. Other than naked, vague, and perfunctory accusations against all subpoenaed non-parties, the Motion contains no factual averments or evidentiary support justifying the gratuitous and libelous charges against Objectors. If the branch of the Motion seeking relief against Objectors is severed and denied, future statements liable to tarnish Objectors' reputation and sully their professional integrity should be supported by more than hyperbole and boilerplate.

The rules governing this dispute are straightforward. Although Fed. R. Civ. P. (Rule) 26(b)(1) grants litigants wide berth in their quest for relevant information, it also "encourage[] judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Henry v. Morgan's Hotel Grp., Inc.*, 2016 U.S. Dist. LEXIS 8406, at *9 (S.D.N.Y. 2016) (cleaned up). Proportionality—the relationship between the information sought and its probative weight with respect to a party's claim or defense— is the lodestar to the adjudication of any discovery dispute. *Id.*; *see also Rodriguez v. NNR Global Logistics USA Inc.*, 2016 U.S. Dist. LEXIS 46093, at *3-4 (E.D.N.Y. 2016); *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 U.S. Dist. LEXIS 162164, at *13-14 (S.D.N.Y. 2015); *Night Hawk Ltd. v. Briarpatch Ltd., LP*, 2003 U.S. Dist. LEXIS 23179, at *23-25 (S.D.N.Y. 2003). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings" (*Night Hawk*. at *23), keeping in mind that "the status of a witness as a non-party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience." *Id*. at *23-24 (cleaned up).

Overbroad subpoenas will not be enforced. *Henry* at *6-7. Though the contours of subpoenas narrow enough to avoid such fate are left to a case-by-case determination, requests for "any and all documents" relating to a particular subject are generally deemed inherently overbroad. *Id*.

Additional considerations guiding courts in their analysis are whether the subpoenaed information is available elsewhere (*Fayda* at *15; *Night Hawk* at *23) and, importantly, whether the information is actually to be used in the pending case or is, instead, a "fishing expedition" seeking support for some other controversy. *Night Hawk* at *24; *see also Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) ("But this is not a prosecutorial investigation -- it is a civil lawsuit. No fishing expeditions will be tolerated.")

### a. *There are no allegations against Theagene and Central Park.*

Start with the identical subpoenas issued to Theagene and Central Park, annexed as **Exhibit C**. As detailed in **<u>Rider "A,"</u>** each subpoena covers the period from "January 2013 to the Present" with respect to "all contracts and agreements" and "[a]ll bills, invoices, statements, and/or purchase orders concerning any work, labor, products and/or services" involving Theagene/Central Park and 8 "Persons and Entities."

GEICO does not explain what connection might exist between Theagene/Central Park and this action. Neither is named, even in passing, in the Amended Complaint. DE 46. The Motion

suggests, vaguely, that either or both might be implicated in some nefarious endeavor. Though GEICO is undoubtedly in possession of some information that might explain its suspicions, no such evidence or allegation is proffered in support of the Motion. Consequently, the branch of the Motion seeking relief against Theagene/Central Park should be denied on this basis alone.

Note, in the alternative, that of the 8 Persons and Entities in **Rider "A,"** four are named Defendants (MBCC Support Ltd, Elena Munin-Akhunov, Practice Wiz, Inc., and Simon Davydov). At a minimum, the subpoena should be denied as duplicative with respect to any information concerning these 4 Defendants, since they will be required to provide it, if found to be relevant and proportional, as part of their discovery obligations.

Also listed are 3 defaulting non-parties (Innovative Business Strategies, Inc., Progress Solutions, Inc., and Per 2007, Inc.), from whom GEICO seeks identical information as the subpoenas served upon Theagene/Central Park. GEICO will presumably obtain this information upon their default. The corresponding branch of the Motion should be denied as duplicative.

This leaves Practice Support & Resources, Ltd, whose connections with Theagene/Central Park, and with this action, are obscure. This branch of the Motion should be denied accordingly.

b. ***The allegations against Rodriguez and St. Francis are meritless as a matter of law. Even if they were not, the information sought in the subpoenas is irrelevant. Even if relevant, the subpoenas are overbroad, unduly burdensome, and not proportional.***

As for the identical subpoenas served upon Rodriguez and St. Francis, annexed as *Exhibit D*, each of their **Rider "A"** covers the same period and types of documents —concerning 7 "Persons and Entities"— as for Theagene/Central Park.

Of those Persons and Entities, 3 are named Defendants in this case (MBCC Support Ltd, Elena Munin-Akhunov, and Simon Davydov). The corresponding branch of the Motion should be denied as duplicative, for the same reasons urged for Theagene and Central Park.

With respect to the 4 remaining Persons and Entities, and generally the subpoenas as a whole, it is questionable whether the information they seek is relevant and, if so, proportional to GEICO's claims. According to the Amended Complaint, particularly ¶¶6, 51, and 63, the machinations of which the Defendants are accused commenced in early 2013. Yet, that is precisely when Rodriguez and St. Francis *ceased* to be involved with Defendants' activities. *Id*. at ¶82.

Consider, now, that RICO has a 4-year statute of limitations, which begins to accrue not from the date of discovery, but from the date of injury. *See e.g. Moeller v. Zaccaria*, 831 F Supp 1046, 1051 (S.D.N.Y. 1993). Even overlooking the fact that, absent a fiduciary relationship, Objectors had no duty to disclose the information sought through the subpoenas (*id*. at 1052), Rodriguez and St. Francis did nothing to prevent GEICO from discovering their alleged wrongdoing. Thus, no tolling conceivably applies to them. *Cf. Bankers Trust Co. v Rhoades*, 859 F2d 1096, 1105 (CA2 1988) (discussing "standard tolling exceptions.")

In fact, nothing in the Amended Complaint even suggests, let alone alleges with particularity, that Rodriguez and St. Francis concealed anything from GEICO —except for certain "agreements" which are claimed to exist for all Defendants (DE 46, ¶¶99-101), but which remain unspecified as to Rodriguez and St. Francis. All allegations in the Amended Complaint that even implicitly involve them (DE 46, ¶¶79-82, 110-144) show that GEICO had all necessary information to detect fraud as soon as it received the would-be "inflated" bills and supporting medical reports. This is important because both Ins. Law §5108(c) and its implementing regulation, 11 NYCRR 68.8, impose upon insurers an affirmative duty to be vigilant and to report promptly any *pattern* of "overcharging, excessive treatment or any other improper actions" —which §68.8(b) defines as

any such action "involv[ing] three or more patients." What is more, this regulation peremptorily requires insurers to "designate a claims person in each no-fault claim processing office to *maintain a master file of each instance of overcharging, excessive treatment or any other improper action* on the part of a health service provider." (Emphasis added).

So, at least with respect to the charges of excessive or unnecessary billing, GEICO may not seriously claim that it could not have discovered them "until shortly before it filed [the] Amended Complaint" (DE 46, ¶297) —at least not without also conceding, implicitly, its knowing and willful violation of the due-diligence requirements imposed upon it by §68.8(b). This regulation also belies GEICO's claimed inability to promptly detect the alleged "fraud" in the "initial evaluations" and "follow-ups" (DE 46, ¶¶116-144), inasmuch as GEICO repeatedly asserts that the documents received at the claim stage were "almost identical" for every patient. *See e.g. id*. at ¶¶118, 139, 143, and 148. GEICO cannot have it both ways. Either the allegations in the Amended Complaint are true, and so it should have seen the "pattern of overcharging, excessive treatment or … other improper action" beginning with the bills and supporting medical records for the third such patient; or, those allegations altogether fail to state a claim, due to lack of reasonable reliance. "[W]hen the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it." *Global Mins. & Metals Corp. v. Holme*, 35 AD3d 93, 100 (1st Dept 2006), *lv denied* 8 NY3d 804 (2007) (citing *Banque Franco-Hellenique De Commerce Intl. et Mar., S.A. v. Christophides*, 106 F3d 22, 26-27 [CA2 1997]).

One additional point merits mention: proximate causation. GEICO ostensibly believes that its insureds are no more capable of independent volition than a flock of sheep. *See e.g.* id., ¶¶108 ("steered"), 109, 112 ("subjected to"), and 142 (same). As GEICO postulates it, Rodriguez and St. Francis first, and then the named Defendants, just awaited the arrival of these unsuspecting and mindless individuals like a lion in its lair, ready to pounce on them to submit them to endless, inflated, and unnecessary treatment. They, in turn, would passively accept whatever treatment was foisted upon them solely to benefit the coterie of alleged crooks named in the Amended Complaint.

Not once does GEICO allow for the possibility that those patients sought (and gladly received) treatment because they were in pain and needed medical attention. Nothing in the Amended Complaint suggests that the underlying motor vehicle accidents did not occur or that the injuries arising therefrom were feigned. Besides, unlike certain medical and workers' compensation plans, Article 51 of the Insurance Law and it implementing regulations (the "No-Fault Law") *do not require* any referral before an individual injured in a car accident can see a specialist.

"There comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Indiana*, 338 US 49, 52 (1949). Objectors did not "steer" anyone, even less "subject" their patients to any preordained, unnecessary, or inflated course of treatment. It was the patients who sought Objectors out and, after an initial evaluation, accepted their referrals to physical therapists, acupuncturists, chiropractors, and anyone else who might make the patients' pain go away. It was the patients who —pursuant to their contractual rights under GEICO's policies— ultimately caused the bills by Objectors and the named Defendant to be submitted to the insurer. "When factors other than the defendant's actions are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F Supp 2d 210, 218 (S.D.N.Y. 2000) (cleaned up). Objectors billed GEICO because they actually treated its insureds and were assigned the corresponding rights to reimbursement. Had those insureds not willfully, willingly, and repeatedly chosen to be treated by Objectors (and the named Defendant), the entire fraudulent masterplan conjured up by GEICO would have just fizzled out.

One final point. Both the Motion and the Amended Complaint suggest that Objectors had certain unspecified "agreements" with lay individuals, the purpose of which was to impermissibly siphon profits away from Objectors. While noting that neither the Motion nor the Amended Complaint even comes close to describe the pervasive tapestry of egregious facts described in *Andrew Carothers, MD, PC v. Progressive Ins. Co.*, ___NY3d___, 2019 NY Slip Op. 04643 (2019), these "agreements" might render Rodriguez and St. Francis ineligible for No-Fault reimbursement. *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 NY3d 313 (2005). Yet, this is immaterial, for GEICO admits that Rodriguez and St. Francis no longer have anything to do with the allegations in the Amended Complaint, and have not since 2013 (DE 46, ¶82) —well beyond the applicable statute of limitations. Thus, even if these "agreements" did in fact exist, and even if they were the type proscribed by *Mallela* (and again, Objectors emphatically deny both prongs), they would be virtually useless in this action. The subpoenas seeking their disclosure are not proportional to the burden imposed on Rodriguez and St. Francis, and even less to the benefits that GEICO may reap in its case against the named Defendant. The real benefit accruing to GEICO would, instead, likely be to aid it in the investigation and/or prosecution of *other* cases. This, however, is impermissible. *Catskill Dev., LLC* at 93; *Night Hawk* at *24.

In sum, the branch of the Motion pertaining to Rodriguez and St. Francis should be denied. The subpoenas served on these Objectors are overbroad and unduly burdensome. Moreover, they seek information obtainable from other sources; and are not proportional to GEICO's claims.

### III. Confidentiality Order

In their correspondence to GEICO, Objectors timely objected to the subpoenas on confidentiality grounds. The information sought in the subpoenas constitutes "trade secrets," and is protected under both Federal and State law (*see e.g. Ruckelshaus v. Monsanto* Co., 467 U.S. 986, 1002-1004 [1984]; 18 USC §1839[3]; 26 USC §197[d][1]; Public Officers Law §87[2][d]; *Ashland Management v. Janien*, 85 NY2d 395, 407 [1993]; *Matter of Pepsi-Cola Bottling Co. of NY, Inc. v. NY Pepsi-Cola Distribs. Assn., Inc.*, ___AD3d___, 2019 NY Slip Op 03901 (1st Dept 2019); Uniform Trade Secret Act §1[4] [1985]; 2015 NY Senate Bill S3770 §279-n [d]; 2017 NY Senate Bill S4688 §279-n [d]; 2019 NY Senate Bill S2468 §279-n [d]). To the extent bank records are sought or will be produced, these are entitled to similar protection. *See e.g. Zbigniew Zagroba v. York Restoration Corp.*, 2011 US Dist LEXIS 57118, at *6-7 (EDNY 2011).

Objectors' concerns were not obstreperous. Even if the Court disagrees with all of the foregoing, GEICO has not set forth any valid reason why the information and/or testimony that the Court may compel Objectors to provide should not be covered by a confidentiality agreement. Note, in this respect, that there is already a Confidentiality Order in effect in this case. DE 40. It would be exceedingly easy to adapt that Order to protect Objectors' information as well.

### IV. Oral Argument. Costs

To the extent the Court deems it necessary, Objectors respectfully request oral argument to articulate their contention in a more comprehensive fashion.

Finally, Objectors respectfully request that, depending on the Court's ultimate determination on the Motion, the Court also apply Rule 45(d)(1) or (d)(B)(ii) as the case may be.

Respectfully submitted,

_____
Max VALERIO